Name John Adams
Address 950 Pennsylvania Ave NW
City, State, Zip Washington, D.C.
Phone (202) 353-1555
Fax
E-Mail John.Adams5@usdoj.gov

☐ FPD ☐ Appointed ☐ CJA ☐ Pro Per ☐ Retained

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| United States<br>PLAINTIFF(S),<br>v.<br>Musical.ly<br>DEFENDANT(S). | CASE NUMBER:<br>No. 2:19-cv-1439<br><br>**NOTICE OF APPEAL** |

NOTICE IS HEREBY GIVEN that United States hereby appeals to
*Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify): Final Order on the United States' Consent Motion to Vacate Stipulated Order

☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on September 21, 2026. Entered on the docket in this action on September 21, 2026.

A copy of said judgment or order is attached hereto.

Oct 23, 2026
Date

Signature
☐ Appellant/ProSe ☒ Counsel for Appellant ☐ Deputy Clerk

**Note:** The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-1439-GW-RAOx | Date | September 21, 2026 |
| Title | *United States of America v. Musical.ly, et al.* | | |

| | |
|---|---|
| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |

| | | |
|---|---|---|
| Javier Gonzalez | Miranda Algorri | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| John K. Adams, US DOJ | Drew E. Breuder<br>Matthew D. Powers |

**PROCEEDINGS: THE UNITED STATES' CONSENT MOTION TO VACATE STIPULATED ORDER [12]**

Attorney Derek W. Loeser, lead counsel for Plaintiffs in the MDL 3144 - In Re: Tiktok, Inc., Minor Privacy Litigation is present by telephone.

The Court issued its Tentative Ruling on the Government’s Motion [12] on September 18, 2026 [19]. Oral argument is held. The Tentative Ruling is adopted as the Court’s Final Ruling. The Court DENIES the Motion without prejudice. The parties will meet and confer regarding the Government’s filing of its renewed motion and advise the Court’s clerk as soon as practicable.

: 45

Initials of Preparer JG

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 19-1439-GW-RAOx | Date | September 18, 2026 |
| Title | *United States of America v. Musical.ly, et al.* | | |

| | |
|---|---|
| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |

| | | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**PROCEEDINGS: IN CHAMBERS - TENTATIVE RULING ON THE UNITED STATES' CONSENT MOTION TO VACATE STIPULATED ORDER [12]**

Attached is the Court's Tentative Ruling on the Government's Motion [12] set for hearing on September 21, 2026 at 8:30 a.m.

: 

Initials of Preparer JG

***United States of America v. Musical.ly, et al.***; Case No. 2:19-cv-01439-GW-(RAOx)
Tentative Ruling on Motion to Vacate Judgment

Before the Court is the "Consent Motion to Vacate Stipulated Order" (the "Motion," Docket No. 12), filed by Plaintiff the United States of America (the "Government"), which seeks to terminate the Consent Order entered in this action on March 27, 2019 (*see* Docket No. 10). *See generally* Motion. The Motion is unopposed. The Court has considered the Motion and, for the reasons stated herein, the Court would **DENY** it without prejudice.

**I. <u>Background</u>**

**A. The 2019 Enforcement Action and Consent Order**

On February 27, 2019, the Government, acting on behalf of the Federal Trade Commission ("FTC"), brought this action against defendants Musical.ly and Musical.ly, Inc.[1] (collectively, "Defendants"), seeking monetary civil penalties, a permanent injunction, and other equitable relief in connection with Defendants' alleged data collection practices concerning child users of their mobile application. *See generally* Complaint ("*Musical.ly* Complaint"), Docket No. 1. The action arose under the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 41 *et seq.*, and the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. § 6501 *et seq.* *See Musical.ly* Complaint ¶ 1.

COPPA aims to "safeguard the confidentiality, security, and integrity of . . . children's personal online information" by requiring "companies that operate websites and online services marketed toward children . . . [to] provide certain disclosures about their data collection activities." *Jones v. Google LLC*, 73 F.4th 636, 641 (9th Cir. 2023). "Under COPPA it is unlawful for a website or online service that is 'directed to children' or has 'actual knowledge' of child users to collect personal information from those children unless the platform collects information in a manner permitted by FTC regulations." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 753 F. Supp. 3d 849, 875 (N.D. Cal. 2024) (quoting 15 U.S.C. § 6502(a)(1)); *see also* Children's Online Privacy Protection Rule ("COPPA Rule"), 16 C.F.R. pt. 312. A violation of COPPA also constitutes an unfair or deceptive act in or affecting commerce, in violation of Section

[1] In April 2019, Musical.ly was renamed TikTok Ltd.; in May 2019, Musical.ly, Inc. was renamed TikTok Inc. *See United States v. ByteDance Ltd.*, No. 2:24-cv-06535 (C.D. Cal.), Complaint, Docket No. 1, ¶ 28. The Court uses "Defendants" to refer to these two entities under their former and subsequent names. References to "TikTok," without a corporate designation, refer to the application or platform.

5(a) of the FTC Act, 15 U.S.C. § 45(a). *See* 15 U.S.C. § 6502(c); 15 U.S.C. § 57a(d)(3).

Defendants operated a mobile application called Musical.ly, which was a social networking application that allowed users to create, post, and view videos synchronized with music or other audio clips. *See Musical.ly* Complaint ¶¶ 12-18. In this enforcement action, the Government alleged that "[a] significant percentage of Musical.ly users [were] children under 13," that Defendants were aware that children were using the app, and that Defendants had "received thousands of complaints from parents that their child under 13 years old had created a Musical.ly App account without their knowledge." *Id.* ¶¶ 19-21. Additionally, it was averred that "Defendants also had actual knowledge they were collecting personal information from children . . . ." *Id.* ¶ 28. The Government asserted that said conduct violated COPPA – and in turn, the FTC Act – by failing to comply with numerous required practices in dealing with personal data from minors under the age of 13. The referenced COPPA violations included: (1) failing to provide notice of privacy policies to children and their parents; (2) failing to obtain parental consent prior to collecting personal information from children; (3) failing to delete information collected from children at a parent's request; and (4) failing to retain children's personal information only as long as reasonably necessary to fulfill the purpose for which it was collected. *Id.* ¶ 31; *see* 16 C.F.R. §§ 312.4(b), 312.4(d), 312.5(a)(1), 312.6(a)(2), 312.10.

The *Musical.ly* Complaint described Defendants' operation of the Musical.ly app beginning in 2014. *See Musical.ly* Complaint ¶ 12. According to the Complaint, ByteDance Ltd. ("ByteDance") acquired Defendants in December 2017. *Id.* ¶ 23. While the allegations were principally directed at the Musical.ly app, the Complaint also noted that in August 2018, the Musical.ly app merged with ByteDance's app (*i.e*. TikTok) under the TikTok name. *Id.* Defendants then continued to operate the merged app. *Id.*

The Complaint that was filed herein included a 17-page "[Proposed] STIPULATED ORDER FOR CIVIL PENALTIES, PERMANENT INJUNCTION, AND OTHER RELIEF."[2] On March 27, 2019, Judge Otis D. Wright II entered that stipulated order ("Consent Order," *see* Docket No. 10) in this action. The Consent Order provided both immediate and continuing relief by imposing three principal categories of obligations on Defendants "and their successors and assigns," *see id.* at 3. First, it supplied immediate relief by permanently enjoining Defendants from

---

[2] Obviously, the parties had agreed upon a disposition of the lawsuit (subject to the Court's approval) before the action was even filed.

violating COPPA, requiring the deletion of personal information associated with then-existing underage accounts, and levying a $5.7 million civil penalty. *See* Consent Order at 3, 7-11. Second, it imposed ongoing reporting and recordkeeping obligations, some of which remain in effect until 2029. Notably, Defendants were required to report on their deletion efforts; provide notice of corporate changes for ten years; and create certain compliance and data-collection records for ten years, retaining each record for five years. *Id.* at 10-15. Third, the Order established mechanisms for monitoring and enforcement, including the Government's ability: (1) to request additional reports and information under penalty of perjury, (2) to obtain discovery without further leave of court by using any procedure prescribed under the Federal Rules of Civil Procedure, and (3) to directly communicate with Defendants and their employees. *Id.* at 15. Upon issuing the Consent Order, Judge Wright closed the case while retaining jurisdiction for the purposes of "construction, modification, and enforcement" of the Order. *Id.* at 16.

**B. The 2024 Enforcement Action and ByteDance's Divestiture**

On August 2, 2024, the United States, again acting on behalf of the FTC, filed a second enforcement action against Defendants, along with four related ByteDance and TikTok entities (collectively, the "*ByteDance* Defendants"). *See United States v. ByteDance Ltd.*, No. 2:24-cv-06535-GW-(RAOx) (C.D. Cal.), Complaint ("*ByteDance* Complaint"), Docket No. 1. The Government alleged that COPPA violations continued after entry of the Consent Order and again sought a permanent injunction, civil penalties, and other relief. *Id.* ¶¶ 1-4, 125.

The *ByteDance* Complaint described conduct beginning at least as early as March 2019 and continuing through the filing of that action, alleging many of the same types of COPPA violations as in the *Musical.ly* Complaint. *See id.* ¶¶ 1-4, 34-40. This time, however, the Government added that the *ByteDance* Defendants allowed children under thirteen to evade or bypass TikTok's age gate and improperly collected information from children using TikTok's "Kids Mode." *Id.* ¶¶ 34-60. The Government further alleged that TikTok Inc. and TikTok Ltd. – the renamed Defendants in this action – violated the Consent Order by failing to create and maintain records sufficient to demonstrate their compliance with COPPA and the Order, including records identifying affected accounts, documenting moderators' review of suspected child accounts, and showing what remedial actions were taken. *Id.* ¶¶ 106-10. According to the *ByteDance* Complaint, this insufficient recordkeeping made it difficult to determine the full magnitude of the alleged violations, although the available evidence indicated that millions of

children had used TikTok. *Id.* ¶¶ 38, 87, 97-105.

Shortly after the *ByteDance* Complaint was filed, minors filed private actions in federal courts across the country predicated on similar factual allegations underlying the *ByteDance* COPPA action. On April 3, 2025, in light of these numerous civil class action lawsuits, the United States Judicial Panel on Multidistrict Litigation ordered the transfer of pending (and potential future) actions to the Central District of California. *See In Re: TikTok, Inc., Minor Privacy Litigation*, No. 2:25-ml-03144-GW-(RAOx) (C.D. Cal.), Docket No. 1.

While the *ByteDance* enforcement action was pending, TikTok went through another change in its ownership structure – this one forced upon it by Congress. In 2024, Congress passed the Protecting Americans from Foreign Adversary Controlled Applications Act (the "Act"), Pub. L. 118-50, div. H, 138 Stat. 955, which "makes it unlawful for any entity to provide certain services to 'distribute, maintain, or update' a 'foreign adversary controlled application' in the United States. Entities that violate this prohibition are subject to civil enforcement actions and hefty monetary penalties." *TikTok Inc. v. Garland*, 604 U.S. 56, 65-66 (2025) (citing Act §§ 2(a)(1), 2(d)(1)(A), (d)(2)(B)). Under the Act, Defendants had until January 19, 2025 to either cease TikTok operations in the United States or undergo a "qualified divestiture," to be approved by the President. *See* Act §§ 2(a)(2)(A), 2(c)(1), 2(g)(6). Following a series of executive orders delaying enforcement, President Donald Trump approved a divestiture plan in September 2025, under which the TikTok platform would be operated by a newly established joint venture based in the United States (*i.e.*, "TikTok US"). *See* Exec. Order No. 14352, 90 Fed. Reg. 47219, §§ 1-2 (Sept. 30, 2025). Under the divestiture plan, TikTok US would "no longer be controlled by any foreign adversary" because ByteDance and its affiliates would own less than 20 percent of the entity, with the remainder being held by other investors. *Id.* In January 2026, TikTok US announced that it had completed the qualified divestiture required under the plan. *See* Motion at 7-8.[3]

**C. Settlement and the Present Motion**

According to the Government herein, in August 2026, it reached a settlement agreement with TikTok US concerning both COPPA enforcement actions in *Musical.ly* and *ByteDance*. *See* Motion at 8. The settlement was not public, and the Government's Motion provides no details

---

[3] *See also Announcement from the new TikTok USDS Joint Venture LLC*, TikTok.com (Jan. 23, 2026), available at https://perma.cc/M46R-6H2Z (last visited September 18, 2026).

about its terms, other than that "TikTok US paid a significant sum of money."[4] *Id.* at 8.

In the *ByteDance* litigation, the parties filed a Joint Statement of Dismissal which consisted of two sentences: "Plaintiff the United States of America and Defendants ByteDance Ltd., ByteDance Inc., TikTok Inc., TikTok Ltd., TikTok Pte. Ltd., and TikTok U.S. Data Security Inc., by their undersigned counsel, hereby stipulate and agree to dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). The dismissal shall be with prejudice." *ByteDance*, Docket No. 83. The Stipulation does not state whether the dismissal is based upon a settlement or agreement of the parties; what the terms of the settlement/agreement are; and/or whether the parties wish for the Court to retain jurisdiction over the case to enforce the terms of the settlement/agreement should that need arise.[5] Nevertheless, this Court – as it was required to[6] – dismissed the *ByteDance* case with prejudice. *Id.*, Docket No. 89. However, in doing so, the Court noted that, "[g]iven the significant issues raised within this litigation and this Court's interest/curiosity in any resolution so suddenly reached by the parties, it is tempted to inquire of the parties [but] lacks the power to do so." *Id.*

The Government now moves herein – evidently as part of a settlement agreement, *see*

---

[4] The exact amount of money does not appear to be specified in the Motion. However, this Court is aware that on August 21, 2026, the Office of Public Affairs for the U.S. Department of Justice issued a press release which stated, *inter alia*, that:

> Today, the Department of Justice announced a $400 million settlement with TikTok, ByteDance, and affiliated entities (TikTok) resolving litigation concerning compliance with the Children's Online Privacy Protection Act and its implementing regulations (COPPA). Under the settlement, TikTok will pay $300 million immediately and an additional $100 million upon entry of an order vacating a prior consent decree entered against TikTok's predecessor, Musical.ly.

https://www.justice.gov/opa/pr/justice-department-secures-400m-settlement-tiktok-and-bytedance-resolve-childrens-privacy (last visited on September 18, 2026). Unfortunately, that information cannot be considered here as it is the normal course for the federal judiciary to receive necessary factual material through direct filings with the court by the parties rather than through press releases issued to the public.

While not relying on the cited press release for purposes of evaluating the Motion, the Court does wonder whether the press release is indicating that TikTok is already irrevocably bound to pay $300 million immediately (and without any further condition being met), but will only pay the additional $100 million should the "prior consent decree entered against TikTok's predecessor, Musical.ly" be vacated.

[5] While not disclosed in the *ByteDance* litigation, the Government in its Motion herein does refer to a settlement with TikTok US which requires it "to pay a substantial payment in connection with the allegations in these cases." Motion at 3.

[6] "Stipulation of dismissal ordinarily and automatically strips [the] district court of subject-matter jurisdiction, and thus any action by [the] district court after filing of such stipulation typically can have no force or effect." 1A Fed. Proc. Forms § 1C:26; *see also Walker v. Arizona*, 158 F.4th 971, 984 (9th Cir. 2025) (holding that when the parties "jointly stipulated to dismiss Walker's pending federal claims in this removed case, the district court lost jurisdiction"); *Smith v. Phillips*, 881 F.2d 902, 904-06 (10th Cir. 1989).

Motion at 18 – to vacate the Consent Order arguing that "material changes in factual conditions render the continued prospective enforcement of the [Order] inequitable, unnecessary, and no longer in the public interest." *Id.* at 8. The Motion does not indicate that there are any new injunctive provisions as to any of the defendants in the *Musical.ly* or *ByteDance* cases to replace those delineated in the Consent Order.

The present action was transferred to this Court for adjudication of the Government's Motion on August 25, 2026. *See* Docket No. 14.

## II. <u>Legal Standard</u>

Rule 60(b) provides relief from a final judgment, order, or proceeding upon a showing of any of the following:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

## III. <u>Discussion</u>

The Government premises its motion to vacate the Consent Order on Federal Rule of Civil Procedure 60(b)(5) or, alternatively, 60(b)(6). *See* Motion at 2. The Court first discusses the Government's contention that a deferential standard should govern the application of those rules, then proceeds to apply Rule 60(b) to the facts as presented by the Government's papers.

### A. Whether a Deferential Standard Applies

The Government first argues that vacatur is warranted under a "deferential standard" for unopposed Rule 60(b) motions, where the Government acts with consent from all other parties to sunset a consent decree that imposes obligations on a private party. *See* Motion at 9. The Government explains that it has "reasonably exercised its prosecutorial discretion" in light of material changes since the Consent Order took effect, and the Court should defer to its judgment.[7] *Id.* at 11.

---

[7] Because the Government has failed to delineate any of the operative provisions of its purported settlement agreement with the Defendants (other than a reference to the payment of an unspecified sum of money), it is impossible to determine whether the Government has, in fact, reasonably exercised its prosecutorial discretion.

*Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 392 n.14 (1992), expressly states, however, that "[n]o deference is involved" as to the threshold inquiry of whether the movant has established a significant change warranting modification of a consent order. The authorities cited by the Government do not state otherwise. The Government refers multiple times, for example, to *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984), for the proposition that "[w]here the United States, acting in its enforcement discretion and without objection from the other party, seeks vacatur of a consent decree, courts should approve the request unless it would be 'unfair, inadequate or unreasonable.'" *See* Motion at 2 (citing *Randolph*, 736 F.2d at 529). But *Randolph* did not concern a Rule 60(b) motion at all; rather, the standard cited by the Government concerns the *initial approval* of a consent order, not its modification or termination.[8] Indeed, *Randolph* itself recognizes that, once entered, a consent decree is a judgment like any other with res judicata effect. *See* 736 F.2d at 528. And citing *Randolph*, the Ninth Circuit recently explained that an approved consent decree is an "enforceable, final judgment" governed by the rules applicable to other judgments and "may be reopened only to the extent that equity requires." *Mi Familia Vota v. Petersen*, 129 F.4th 691, 717-18 (9th Cir. 2025), *cert. granted sub nom. Republican Nat'l Comm. v. Mi Familia Vota*, No. 25-1017 (U.S. June 29, 2026). Although courts should defer to the judgment of the executive branch when entering a consent order in the first place, relief from such an order (once it has been incorporated or made part of a judgment) requires satisfying the standards set out in Rule 60(b).

The deferential standard sought by the Motion is also not required by separation-of-powers concerns. The Government argues that refusing to vacate the consent order would unduly interfere with the executive branch's ability to seek civil penalties against private parties, which is "a quintessentially executive power" and "well within [its] prosecutorial discretion." *See* Motion at 12 (quoting *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 219 (2020)). *Seila Law*, however, along with most of the authorities the Government cites for this proposition, did not concern relief from a final judgment, as is requested here. And *Frew v. Hawkins*, 540 U.S. 431

[8] In *Randolph*, the Securities and Exchange Commission in an insider trading matter reached a disposition and filed a complaint along with a proposed consent decree. 736 F.2d at 527. The district court – finding that the consent decree was not sufficiently severe as to the defendants – denied the parties' motion to approve the consent decree and dismissed the action. The Ninth Circuit reversed with directions to enter the consent decree holding *inter alia* that "'[t]he *initial* decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge' . . . . [and this] discretion is not unbridled . . . [so u]nless a consent decree is unfair, inadequate, or unreasonable, it ought to be approved." *Id.* at 529 (emphasis added and citations omitted).

(2004), which *does* concern the enforcement of a consent order, does not support a different result. *See* Motion at 12. *Frew* acknowledged that "[i]f not limited to reasonable and necessary implementations of federal law, remedies outlined in consent decrees involving state officeholders may improperly deprive future officials of their designated legislative and executive powers." *Frew*, 540 U.S. at 441. But *Frew* proceeded to explain that "the law's primary response to these concerns" lies in the court's equitable powers under Rule 60(b)(5), and that, unless the movant establishes a sufficient reason for modification, "the decree should be enforced according to its terms." *Id.* at 441-42. Only *after* "a court has determined that a modification is warranted" is any deference to the views of government officials required. *See Rufo*, 502 U.S. at 392 n.14.

Further, the Court's independent evaluation of whether to vacate the Consent Order does not encroach upon functions of the executive branch – notwithstanding that the executive branch may have conditioned its settlement and civil penalties, in part, on that vacatur. Denial of the present Motion would neither compel the Government to continue prosecuting the 2024 enforcement action nor restrict its authority to allocate enforcement resources or seek monetary penalties.[9] Although denial may affect the parties' settlement bargain, the inclusion of a vacatur condition cannot itself establish entitlement to relief from a final judgment. *Cf. U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994) (explaining, in the context of appellate vacatur, that a settlement provision requiring vacatur does not constitute an exceptional circumstance justifying that relief). In deciding to condition its settlement on vacatur of a final judgment, the Government made that aspect of its settlement dependent on the Court's independent determination that relief from the judgment is warranted. *See Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1168-70 (9th Cir. 1998) (requiring an independent evaluation of the equities when a district court considers vacating its own judgment following mootness caused by the parties' voluntary conduct). As such, vacatur of a final judgment is separate from the avenues available to the executive branch for seeking civil penalties through settlement. The Government may condition its settlement on requesting vacatur, but that condition cannot displace the Court's independent obligation to decide whether vacatur is warranted under Rule 60(b).

Finally, the Government cites no authority supporting its proposition that a deferential standard applies because it seeks to terminate the Order unopposed and with the consent of the

[9] Indeed, the *ByteDance* litigation has already been dismissed with prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(ii) as stipulated by the parties therein.

bound party. The Government, as the movant, "bears the burden of establishing that changed circumstances warrant relief," *see Horne v. Flores*, 557 U.S. 433, 447 (2009), and the absence of opposition does not relieve the Government of this burden. Courts have denied motions to modify or terminate consent orders that are unopposed by the parties to the litigation, with opposition coming only from amici. *See, e.g.*, *United States v. Essa Bank & Tr.*, No. 23-2065, 2025 WL 2087776, at *5 n.8 (E.D. Pa. July 23, 2025). Thus, although unopposed, the Court proceeds to analyze the merits of the Motion under the appropriate rules.

**B. Rule 60(b)(6)**

The Court first addresses the Government's argument that Federal Rule of Civil Procedure 60(b)(6) may provide the relief it seeks if Rule 60(b)(5) is insufficient. Rule 60(b)(6) – a catchall provision – allows setting aside a final judgment, order, or proceeding upon a showing of "any other reason" that justifies such relief. Fed. R. Civ. P. 60(b)(6). "[C]lause (6) is mutually exclusive with the other five bases for relief where the request for relief is only premised on reasons enumerated in clauses (1) through (5)." *Perez-Funez v. Dep't of Homeland Sec.*, No. 81-cv-01457-MWF-(Ex), 2026 WL 982623, at *6 (C.D. Cal. Apr. 6, 2026); *see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993). Further, Rule 60(b)(6) requires the movant to show "extraordinary circumstances" for the Court to exercise its equitable powers to vacate a judgment. *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210 (2025).

Here, the Government has not met its burden under Rule 60(b)(6). Citing factors identified in *Henson v. Fidelity National Financial, Inc.*, 943 F.3d 434, 446-53 (9th Cir. 2019), which concerned a Rule 60(b)(6) motion in a different context, the Government identifies two that it argues support its Motion. *See* Motion at 17. Its application of these factors boils down to the following assertions: "intervening developments justify vacatur" and the Government "acted promptly to vacate after these intervening events." *Id.* These arguments, however, fall squarely under Rule 60(b)(5), which "provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *See Horne*, 557 U.S. at 447 (quoting *Rufo*, 502 U.S. at 384). As stated above, the Government may not premise its Rule 60(b)(6) motion "on another ground delineated in the Rule." *Bynoe v. Baca*, 966 F.3d 972, 979 (9th Cir. 2020). Additionally, arguing under Rule 60(b)(6), the Government again appeals to the "respect to the prosecutorial discretion of the Executive Branch" owed by the courts. *See* Motion at 17. The

Court has already explained that no such deference is warranted, at least regarding the initial determination as to whether cessation of a consent order is warranted. *See Rufo*, 502 U.S. at 392 n.14. Although *Rufo* concerned the application of Rule 60(b)(5), the Government may not circumvent that provision's requirements by repackaging the same grounds for relief under Rule 60(b)(6). The Court thus construes the Motion as seeking relief under Rule 60(b)(5).

**C. Rule 60(b)(5)**

Federal Rule of Civil Procedure 60(b)(5) allows a court to "relieve a party or its legal representative from a final judgment, order, or proceeding" if (1) "the judgment has been satisfied, released, or discharged," (2) "it is based on an earlier judgment that has been reversed or vacated," or (3) "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). Here, the Court understands the Government's motion as seeking vacatur under the first and third prongs of the rule.

Under the first prong, the moving party must show that the relevant parties have substantially complied with or discharged the decree's requirements. *See Jeff D. v. Otter*, 643 F.3d 278, 283 (9th Cir. 2011). Substantial compliance "is not susceptible of a mathematically precise definition," but it implies "something less than a strict and literal compliance with the contract provisions." *Id.* at 284. Any deviations should be "unintentional and so minor or trivial as not 'substantially to defeat the object which the parties intend to accomplish.'" *Id.* (quoting *Wells Benz, Inc. v. United States*, 333 F.2d 89, 92 (9th Cir. 1964)). In considering the performance of a decree's specific terms, a court "must also consider the more general goals of the decree which the terms were designed to accomplish." *Id.* at 288 (quoting *Youngblood v. Dalzell*, 925 F.2d 954, 960 (6th Cir. 1991)).

Under the third prong, "a party seeking modification [or termination] of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Rufo*, 502 U.S. at 383. A significant change in factual conditions may warrant relief when compliance has become "substantially more onerous," when "a decree proves to be unworkable because of unforeseen obstacles," or when "enforcement of the decree without modification would be detrimental to the public interest." *Id.* at 384. A change in law may warrant relief when an obligation imposed by the decree has become impermissible under federal law or when the law has changed to make legal what the decree was designed to prevent. *Id.* at 388. "Once a moving party has met its burden of establishing either a change in fact or in law warranting

modification of a consent decree, the district court should determine whether the proposed modification is suitably tailored to the changed circumstance." *Id.* at 391.

The Government argues that three intervening changes since the issuance of the Consent Order now warrant its termination: (1) the change in ownership of the TikTok platform in the United States; (2) the compliance changes in the TikTok platform itself since entry of the Consent Order in this enforcement action; and (3) a settlement in the form of monetary payment having been reached regarding alleged COPPA violations, which the Government contends achieves the remedial aims of both this and the 2024 enforcement actions.

1. Ownership Change

The Court would find that changes in ownership of Defendants' assets, standing alone, do not constitute legal or factual developments sufficient to satisfy Rule 60(b)(5).

First, while there have been significant legal developments concerning TikTok in the years since the Consent Order was issued, nothing has changed regarding Defendants' legal obligations *under COPPA*. An injunction "must of course be modified if, as it later turns out, one or more of the obligations placed upon the parties has become impermissible under federal law." *Rufo*, 502 U.S. at 388. As explained above, the enactment of the Protecting Americans from Foreign Adversary Controlled Applications Act conditioned TikTok's continued operation in the United States on a qualified divestiture from ByteDance. *See TikTok*, 604 U.S. at 74 ("The Act's prohibitions and divestiture requirement are designed to prevent China – a designated foreign adversary – from leveraging its control over ByteDance Ltd. to capture the personal data of U.S. TikTok users."). Following the divestiture, TikTok's United States operations came under the ownership of TikTok US. The Government's motion emphasizes that the required divestiture addressed significant data-privacy issues and that these legislative changes were "primarily to address data collection practices that are also relevant to conduct leading to the [Consent] Order." *See* Motion at 13. But nothing in the Consent Order hinges on whether Defendants were based in the U.S. or overseas, and the divestiture does not render any provision of the Consent Order unlawful or otherwise conflict with its requirements. COPPA applies without regard to whether the relevant operator is foreign- or domestically owned. As such, the legal changes identified by the Government have not altered any obligations placed upon Defendants by the Consent Order.

Second, the change in ownership is not a factual development that warrants termination of the Consent Order because corporate changes of this general nature were anticipated by the Order

itself. “Ordinarily . . . modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree.” *Rufo*, 502 U.S. at 385. The Government emphasizes in its Motion that TikTok US is but a “newly formed company” and is “thrice removed” from the “legacy operations” of Defendants in this enforcement action, having been acquired by ByteDance and then divested to American owners.[10] *See* Motion at 2, 8. It further argues that this divestiture “represent[s] a fundamental change” and that “the new ownership structure resulting from divestiture could not have been [anticipated] in 2019 when this Court entered the [Order].” *See* Motion at 14. But the Order expressly binds not only Defendants but also “their successors and assigns” to its requirements. *See* Consent Order at 3. It also requires Defendants, for ten years, to provide sworn notice of changes in corporate structure that may affect their compliance obligations, including the “creation, merger, sale, or dissolution” of a covered entity or affiliate. *Id.* at 13. While at the time the Consent Order was entered, the parties may not have expected the *cause* of the divestiture of the then-owners of TikTok, the Consent Order certainly considered the possibility of a change in corporate structure or ownership. The recent transaction mandated by Congress therefore does not, by itself, render continued application of the Order inequitable.

Lastly, there is nothing inherent in the ownership change that renders the aims of the Consent Order accomplished or its enforcement no longer necessary. The Government repeatedly argues that the divestiture has allowed the newly formed U.S.-based TikTok entity to make new “compliance commitments.” *See* Motion at 2, 11, 12, 15, 17. But a commitment to comply is not the same as having demonstrated actual compliance. *See United States v. Lakeland Bank*, No. 22-cv-05746, 2026 U.S. Dist. LEXIS 170620, at *13 (D.N.J. July 31, 2026) (acknowledging Defendant’s stated commitments but concluding that a “promise to comply” does not achieve the purpose of the consent order “to the same degree as maintaining Defendant’s compliance via the consent decree”). Here, neither the Government’s nor TikTok US’s assurances of continuing compliance under new ownership establish that continued enforcement of the Consent Order is unnecessary or its aims are already achieved. Indeed, the Government’s *ByteDance* Complaint alleges that Defendants violated the Order’s recordkeeping requirements and that those failures

---

[10] The Court notes that the Government’s characterization of the original Defendants as merely “predecessor companies” overlooks the allegations of its own *ByteDance* Complaint. It alleged that Defendants were merely renamed and stated that those changes did not alter their obligations under the Consent Order. *See ByteDance* Complaint ¶ 28.

made the magnitude of the alleged COPPA violations difficult to determine. *See ByteDance* Complaint ¶¶ 38, 106-13. Against that backdrop, the Government has not shown that continued monitoring through the end of the Consent Order's agreed term would be superfluous. To the contrary, the Order's remaining recordkeeping and monitoring requirements provide a means of measuring TikTok US's adherence to the very "compliance commitments" upon which the Government now relies.

2. <u>Changes in the TikTok Platform</u>

In addition to referencing TikTok US's generic commitment to future compliance, the Government also describes several concrete changes in the TikTok platform. *See, e.g.*, Motion at 11. The Government argues that these changes warrant equitable termination of the Consent Order or constitute substantial compliance with its aims. *Id.*

According to a declaration by an employee of TikTok US, TikTok's operators have invested in systems designed to prevent children under 13 from accessing its main platform since the Consent Order was entered in 2019. *See* Declaration of Camerin Hunt ("Hunt Decl."), Docket No. 12-1, ¶ 4. TikTok now employs an age gate that requires every user who joins the platform to enter a date of birth. *Id.* Although TikTok previously permitted users to create accounts using third-party credentials from platforms such as Google or Facebook without passing through TikTok's age gate, TikTok has since eliminated that practice and now requires all users to pass through its own age gate. *Id.* In 2023 and 2024, TikTok also implemented "Age Gate 100," an initiative that required every user for whom TikTok did not have a date of birth to pass through the age gate. *Id.* TikTok banned users who failed to respond to the prompt or who entered an age under 13. *Id.*

The Court would conclude, however, that these developments do not establish that the nature of the problem has materially changed such that continued oversight is inequitable or the aims of the Consent Order have been achieved. The Government's own *ByteDance* Complaint alleges that the existence of an age gate did not prevent widespread underage use of the platform. According to the *ByteDance* Complaint, TikTok allowed children to evade or bypass its age gate and collected personal information even from users who identified themselves as children. *See ByteDance* Complaint ¶¶ 35, 40-51. Notably, the Government also alleged that the *ByteDance* Defendants had the information and tools necessary to enforce compliance with COPPA yet still failed to do so. Specifically, it alleged that they knew children routinely misrepresented their ages

to pass through the age gate. *Id.* ¶¶ 100-02. It also alleged that the *ByteDance* Defendants possessed technology that estimated users' ages based on observable behavior but did not use that technology to identify and remove underage users. *Id.* ¶¶ 103-05. That TikTok has developed certain tools for achieving compliance with COPPA therefore does not guarantee that compliance will actually be achieved, and the ongoing requirements of the Consent Order remain beneficial.[11] *See Essa Bank*, 2025 WL 2087776, at *4-5 (denying the government's motion to terminate consent order and reasoning that "[t]he benefits of continued enforcement are substantial").

3. Settlement

Finally, the Government argues that its recent settlement with TikTok US creates a remedy that makes continued enforcement of the Consent Order inequitable. The Government, however, provides no details of the settlement for the Court's review.

The Government primarily relies on *Horne* to characterize the settlement as a "durable remedy" sufficient to replace the Consent Order. *See* Motion at 15. *Horne* explains that continued enforcement is unnecessary "[i]f a durable remedy has been implemented," but the "critical question" remains whether the objective of the underlying order has been achieved. 557 U.S. at 450.[12] The Government therefore must show why the settlement makes continued enforcement unnecessary – not merely that it provides an additional remedy for the alleged violations. The Court acknowledges that settlements that include monetary civil penalties have at least some deterrent effect. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1153 (9th Cir. 2000). But deterrence is not the only function of the Consent Order; it also provides mechanisms for mitigating the severity of future violations. To that end, the Consent Order requires reporting, recordkeeping, and monitoring for detecting violations and verifying continuing compliance. A monetary payment does not, without more, establish that those mechanisms are no longer necessary.

And, as previously explained, the party seeking modification or termination bears the

---

[11] Indeed, the sufficiency of TikTok's current tools for achieving compliance with COPPA is still being litigated in the *TikTok, Inc., Minor Privacy Litigation* MDL.

[12] The Court notes that *Horne* concerned institutional-reform litigation against state officials, and its emphasis on flexibility reflected, among other considerations, the federalism concerns implicated by continued federal supervision of state and local institutions. *See Horne*, 557 U.S. at 448-50.

burden of establishing a significant change in circumstances warranting relief. *See Rufo*, 502 U.S. at 383. The Court would conclude that the Government has not carried that burden. The Government states that "TikTok US paid a significant sum of money,"[13] *see* Motion at 8, but has not provided the settlement amount or evidence describing its other material terms (if any). Even accepting that representation, the Court cannot determine what liabilities the payment resolves, whether the settlement imposes any prospective obligations, or how any such obligations would be enforced. Additionally, the Government has not explained how the payment, considered together with the other asserted changes, obviates the need for the Consent Order's remaining protections.[14] The importance of those protections is illustrated by the Government's own *ByteDance* Complaint, which, as described above, alleged that Defendants' failure to maintain records required by the Consent Order made the magnitude of their alleged COPPA violations difficult to ascertain. *See ByteDance* Complaint ¶¶ 38, 106-08. Therefore, without more information about the settlement, the Court cannot determine that it constitutes a durable remedy or that termination is suitably tailored to the asserted change in circumstances. *See Horne*, 557 U.S. at 450; *Rufo*, 502 U.S. at 391.

In sum, the Government has not shown that the changes in TikTok's ownership, the changes to the platform's compliance measures, or the recent settlement warrant termination of the Consent Order. These developments, at least as put forth in the Government's papers, do not establish substantial compliance with the Order or demonstrate that its prospective protections are no longer necessary. Accordingly, the Court would conclude that the Government has not carried its burden under either the first or third prong of Rule 60(b)(5).

## IV. Conclusion

Based on the foregoing discussion, the Court would **DENY** the Motion without prejudice.

---

[13] The Motion is also ambiguous in regards to whether the settlement funds have already been paid or will be paid in the future. *Compare* Motion at 3 ("The settlement requires TikTok US to pay a substantial payment . . . .") *with* Motion at 8 ("TikTok US paid a significant sum of money as part of the settlement.").

[14] It is totally unclear whether the settlement agreement newly reached by the Government and all of the Defendant parties in these actions vitiates the need for the three principal categories of protective obligations that are delineated in the Consent Order. *See* pages 2-3, *supra*.